BARBARA B. WEBER, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent; HERBERT N. WEBER and RITA G. (WALLSH) WEBER, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Weber v. Commissioner
Docket Nos. 5545-77, 9558-77.
United States Tax Court
T.C. Memo 1981-323; 1981 Tax Ct. Memo LEXIS 424; 42 T.C.M. (CCH) 220; T.C.M. (RIA) 81323; June 23, 1981. Barbara L. de Mare, for the petitioner in docket No. 5545-77. John H. Jankoff, for the petitioners in docket No. 9558-77. Robert B. Marino, for the respondent. PARKER
MEMORANDUM FINDINGS OF FACT AND OPINION PARKER, Judge: Respondent determined deficiencies in petitioners' Federal income tax for the year 1973 in the amount of $ 448 in Docket No. 5545-77 and $ 892 in Docket No. 9558-77. The only issue is whether certain payments pursuant to a property settlement agreement providing that the husband will pay "additional support and maintenance to the Wife to the extent that any of the children shall attend summer camp" constitute alimony which is deductible by the husband under section 215 or child support which is not deductible by him under section 71(b). [1]
*426 FINDINGS OF FACT Most of the facts have been stipulated and are so found. The stipulations of fact and the exhibits attached thereto are incorporated herein by this reference. At the time of the filing of the petition in Docket No. 5545-77, petitioner Barbara B. Weber resided in Tenafly, New Jersey. She timely filed her Federal income tax return for the taxable year 1973 with the Internal Revenue Service Center at Holtsville, New York. At the time of the filing of their petition in Docket No. 9558-77, petitioners Herbert N. Weber and Rita G. (Wallsh) Weber resided in New York, New York. They timely filed their joint Federal income tax return for the taxable year 1973 with the Internal Revenue Service Center at Andover, Massachusetts. Petitioner Barbara B. Weber and petitioner Herbert N. Weber were married in October 1960. Three children were born of that marriage. In 1972 the parents were divorced, and the mother was given custody of the three minor children. In a property settlement agreement entered into in connection with the divorce, it was provided that: SUPPORT AND MAINTENANCE
6. The Husband shall pay to the Wife for her support and maintenance the sum *427 of $ 3,725.00 for the months of October, November and December, 1972. Thereafter, Husband shall pay to the Wife for her support and maintenance the sum of $ 32,300.00 per year in bi-monthly installments of $ 1,345.83. The liability of the Husband for the payments set forth herein shall cease upon the happening of whichever of the following events shall occur first: death of the Husband, marriage of the Wife, death of the Wife. 7. In the event of the remarriage of the Wife prior to the emancipation of the children, the amount which the Husband shall pay to the Wife for the support and maintenance of the infant children shall be the sum of $ 5,000.00 per year per child, until said children are emancipated. 8. The Husband shall maintain Blue Cross and Blue Shield Insurance with Rider J, together with major medical insurance coverage, or the equivalent thereof, for the infant children of the marriage. 9. The Husband shall pay for all medical and dental bills for the infant children of the marriage. It is expressly understood that at the present time the infant child Jennifer is under phychiatric (sic) care and shall continue so to be. 10. The Husband agrees to pay additional *428 support and maintenance to the Wife to the extent that any of the children shall attend summer camp (sleep away or day camp) in an amount not to exceed $ 500.00 per child. 14. The Wife shall not be entitled to any further financial support other than that provided for in this Agreement and the Wife understands and so acknowledges that that portion of the support monies which is allocated to her separate support she will be responsible to report as income taxable to her when the parties file separate income tax returns. The Wife shall be entitled to claim the infant children as dependents for an income tax deduction until remarriage of the Wife, upon which event the Husband shall thereafter be entitled to claim the infant children as dependents for income tax deduction. * * * During 1973, the mother received $ 32,300 from her former husband pursuant to paragraph 6 of the property settlement agreement, and reported the entire amount as alimony income. The father deducted that amount as alimony payments, and there is no dispute as to that treatment. During 1973 the three children attended summer camp and the father made additional payments under paragraph 10. [2] The mother did *429 not report those additional payments on her tax return, but the father deducted them as additional alimony. To protect the revenues, respondent took inconsistent positions during the audit, increasing the mother's income by the amount of the payments and disallowing a deduction for that amount to the father. On brief respondent now takes the position that the additional payments to the former wife (hereinafter referred to as "the wife") constituted additional alimony income includable in her income and deductible by her former husband (hereinafter referred to as "the husband"). *430 OPINION Section 215 allows a deduction for alimony payments by the husband if such payments are includable in the wife's gross income under section 71. [3] Section 71(a)(1) provides that the wife's gross income includes periodic payments "in discharge of * * * a legal obligation which, because of the marital or family relationship, is imposed on or incurred by the husband * * * under a written instrument" incident to the divorce. [4] Section 71(b) creates an exception for payments for the support of minor children. [5] The normal alimony rules do not apply to "that part of any payment which the terms of the * * * agreement fix, in terms of an amount of money or a part of the payment, as a sum which is payable for the support of minor children of the husband." *431 The operative word in section 71(b) is "fix." As the Supreme Court held in Commissioner v. Lester, 366 U.S. 299 (1961), the written agreement itself must expressly specify or fix a sum certain or a percentage of the payment as child support, and the matter cannot be left to inference. The Supreme Court stated (366 U.S. at 303) that: As finally enacted in 1942, the Congress used the word "fix" instead of the term "specifically designated," but the change was explained in the Senate hearings as "a little more streamlined language." Hearings before Senate Committee on Finance on H.R. 7378, 77th Cong., 2d Sess. 48. As the Office of the Legislative Counsel reported to the Senate Committee: "If an amount is specified in the decree of divorce attributable to the support of minor children, that amount is not income of the wife * * *. If, however, that amount paid the wife includes the support of children, but no amount is specified for the support of the children, the entire amount goes into the income of the wife * * *." Ibid. (Italics in original text.) This language leaves no room for doubt. The agreement must expressly specify or "fix" a sum *432 certain or percentage of the payment for child support before any of the payment is excluded from the wife's income. The statutory requirement is strict and carefully worded. It does not say that "a sufficiently clear purpose" on the part of the parties is sufficient to shift the tax. It says that the "written instrument" must "fix" that "portion of the payment" which is to go to the support of the children. Otherwise, the wife must pay the tax on the whole payment. We are obliged to enforce this mandate of the Congress. Here there is no dispute that the $ 32,300 paid pursuant to paragraph 6 of the property settlement agreement constituted alimony properly includable in the wife's gross income and properly deductible by the husband. The only dispute involves the additional payments made pursuant to paragraph 10 of that agreement, payments characterized by the husband as additional alimony and by the wife as child support. The wife says that paragraph 10 (hereinafter sometimes referred to as "the summer camp provision") specifically designates or fixes those payments as child support within the meaning of the Supreme Court's Lester opinion. The husband of course disagrees. *433 The provisions of the property settlement agreement in this case are not as clear as either spouse suggests they are, and there are arguments to be made on both sides of the issue. Paragraph 10 is one of nine provisions (6-14) in that section of the agreement entitled "SUPPORT AND MAINTENANCE." Paragraph 6 provides that the husband "shall pay to the Wife for her support and maintenance" the sum of $ 32,300 per year. Those payments terminate upon the death of the husband, the death of the wife, or the remarriage of the wife. Those payments are clearly alimony includable in the wife's gross income, and under paragraph 14 of the agreement she gets the dependency exemptions for the children. In the event of the remarriage of the wife, paragraph 7 provides that the husband "shall pay to the Wife for the support and maintenance of the infant children" $ 5,000 per year per child until the children are emancipated. Any payments under paragraph 7 would clearly be child support, and under paragraph 14 the husband would then get the dependency exemptions for the children. Thus far, the agreement appears to provide the very type of income shifting contemplated by Congress in section *434 71(b) and by the Supreme Court in the Lester case. The next three provisions of the property settlement agreement are not, however, subject to the contingency of the wife's remarriage, and those payments would continue even after the wife's remarriage. Paragraph 8 provides that the husband shall maintain Blue Cross and Blue Shield insurance for the children. Paragraph 9 provides that the husband is to pay all medical and dental bills for the children. Paragraph 10 provides for additional payments if the children attend summer camp. Paragraph 10 of the agreement provides that: The Husband agrees to pay additional support and maintenance to the Wife to the extent that any of the children shall attend summer camp (sleep away or day camp) in an amount not to exceed $ 500.00 per child. This provision does not track either the language of the alimony provision (paragraph 6) or the language of the child support provision (paragraph 7), and seems almost purposefully ambiguous. The summer camp provision speaks of "additional support and maintenance to the Wife," a factor that may suggest alimony. However, unlike the alimony payments under paragraph 6, the payments under paragraph *435 10 are not subject to the contingency of the wife's remarriage and such payments would not terminate upon the wife's remarriage, a factor that may suggest child support, as is the case with the two immediately preceding provisions. The additional payments under paragraph 10 are triggered by and strictly contingent on the fact of the children's attending summer camp, a factor that may further suggest child support. However, the summer camp provision does not state any specific sum or percentage of a payment for summer camp but simply imposes a ceiling of $ 500 per child. [6] The question is whether, under the Supreme Court's Lester opinion, we are therefore constrained to hold that the payment was alimony to the wife. We think not. *436 The Lester case addresses the situation where an agreement provides for a payment for the support of both the wife and the children without expressly specifying or fixing a sum certain or a percentage of that payment as being for child support. In the present case, the $ 32,300 paid under paragraph 6 is just such a situation. However, the present case involves payments under two provisions of the agreement. The summer camp payment is a separate payment made under a separate provision of the agreement. Section 71(b) involves the problem of "that part of any payment which the terms of the * * * agreement fix, in terms of an amount of money or a part of the payment, as a sum which is payable for the support of minor children." (Emphasis added.) That is not the problem here. Here there is no undifferentiated payment of both alimony and child support lumped together as in he Lester case. The entire amount of money or the entire payment under the summer camp provision is for the children and can be treated as child support. The Court has not found any case involving a provision like the summer camp provision in dispute. [7] As indicated above, the interpretation of that *437 provision is not wholly free of doubt. However, in view of the child-oriented subject matter of the summer camp provision, the fact that the pyment is to be made only if the children attend summer camp, the placement of that provision in the context of other child-support provisions, and the fact that the payment was not subject to the contingency of the wife's remarriage, the Court concludes that paragraph 10 is a provision for child support and that any payments under that provision are for child support. As pointed out in a somewhat different context in West v. United States, 413 F. 2d 294, 295 (4th Cir. 1969): *438 Nevertheless Lester requires only words of designation, not words of obligation. No talismanic rubric is demanded; only specification of a certain amount, as here, for child support is needed. The summer camp provision suffices to designate the payments thereunder as child support. Indeed the present case is stronger than West since the entire amount of the payments under the summer camp provision is for that purpose. Cf. Commissioner v. Gotthelf, 407 F. 2d 491 (2d Cir. 1969), cert. den. 396 U.S. 828 (1969). The husband's payment under the summer camp provision was for child support, not alimony, and was not deductible by him, nor includable in the wife's gross income. Decision will be entered for petitioner in docket No. 5545-77. Decision will be entered for respondent in docket No. 9558-77. Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect during the taxable year here involved, unless otherwise indicated.↩
2. The exact amount of those additional payments is not clear. The stipulations of fact in these cases were prepared and executed before the cases were consolidated for trial, briefing, and opinion. The stipulation in the father's case (Docket No. 9558-77) recites that the father made payments to his former spouse of $ 34,080 which he deducted on his 1973 tax return as alimony, and that respondent disallowed $ 1,780 of that amount. The stipulation in the mother's case (Docket No. 5545-77) recites that she received $ 1,280 from her former husband pursuant to paragraph 10 of the property settlement agreement, the summer camp provision. She did not report that amount on her 1973 tax return, and respondent increased her gross income by an amount of $ 1,280 as additional alimony income. The exact amount of the payments, whether $ 1,780, $ 1,280, or some other amount, can be determined in further proceedings under Rule 155, Tax Court Rules of Practice and Procedure.↩ It is noted that the $ 1,780 claimed by the father exceeds the maximum amount provided by paragraph 10 of the property settlement agreement which would be $ 1,500 (not to exceed $ 500 per child).
3. SEC. 215. ALIMONY, ETC., PAYMENTS. (a) General Rule.--In the case of a husband described in section 71, there shall be allowed as a deduction amounts includible under section 71 in the gross income of his wife, payment of which is made within the husband's taxable year. No deduction shall be allowed under the preceding sentence with respect to any payment if, by reason of section 71(d) or 682, the amount there-of is not includible in the husband's gross income. (b) Cross Reference.-- For definitions of "husband" and "wife", see section 7701(a)(17). ↩
4. SEC. 71. ALIMONY AND SEPARATE MAINTENANCE PAYMENTS. (a) General Rule.-- (1) Decree of Divorce or Separate Maintenance↩.--If a wife is divorced or legally separated from her husband under a decree of divorce or of separate maintenance, the wife's gross income includes periodic payments (whether or not made at regular intervals) received after such decree in discharge of (or attributable to property transferred, in trust or otherwise, in discharge of) a legal obligation which, because of the marital or family relationship, is imposed on or incurred by the husband under the decree or under a written instrument incident to such divorce or separation. 5. SEC. 71. ALIMONY AND SEPARATE MAINTENANCE PAYMENTS. (b) Payments to Support Minor Children↩.--Subsection (a) shall not apply to that part of any payment which the terms of the decree, instrument, or agreement fix, in terms of an amount of money or a part of the payment, as a sum which is payable for the support of minor children of the husband. For purposes of the preceding sentence, if any payment is less than the amount specified in the decree, instrument, or agreement, then so much of such payment as does not exceed the sum payable for support shall be considered a payment for such support.
6. If the mother spent more than $ 500 per child for summer camp, the father would not be contractually obligated to pay any more. It is not entirely clear but apparently the father's payments would be less than $ 500 per child if the camp expenses were less than that amount. There is a dispute in this case as to the amount actually paid pursuant to the summer camp provision, with the father suggesting he paid more than the total ceiling of $ 1,500 and the mother claiming that he paid only $ 1,280. See footnote 2. If the father paid more than $ 1,500 for summer camp, he did so as a volunteer and could not deduct the excess even if payments under paragraph 10 are deemed to be alimony, because payment of any excess would not be a payment "in discharge of * * * a legal obligation * * * imposed on or incurred by the husband" under the written agreement as required by section 71(a). See also Barrer v. Commissioner, T.C. Memo. 1981-256↩.
7. The Court agrees with the wife that the case of Van Oss v. Commissioner, 377 F. 2d 812 (2d Cir. 1967), cited by respondent and the husband, is inapplicable. That case, affirming a memorandum opinion of this Court, did not involve any additional payments under the tuition provision. The only case the Court has found that is somewhat similar to the instant one is Isaacson v. Commissioner, 58 T.C. 659 (1972). Isaacson involved a provision for payment of an additional amount as a vacation payment. However the vacation payment provision used the language "for vacation expenses for the WIFE and CHILDREN" and thus more readily falls into the usual line of Lester↩-type cases than does this case.